IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HANS SCHEING and TINA WEBB-SCHEING | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 15-1028 RGA |
| DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**OPENING BRIEF IN SUPPORT OF STATE DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Joseph C. Handlon
Joseph C. Handlon (#3952)
Ryan P. Connell (#5423)
Deputy Attorneys General
Carvel State Bldg., 6th Floor
820 N. French Street
Wilmington, DE 19801
(302) 577-8400
*Attorneys for State Defendants*

Dated: January 29, 2016

## TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDING ........................................................ 1

FACTUAL BACKGROUND ........................................................................................ 3

ARGUMENT ................................................................................................................ 7

I.      APPLICABLE STANDARDS .......................................................................... 7

II.     ALBANESE, SCHEPENS AND WHITMAN MUST BE DISMISSED FOR
        LACK OF PERSONAL INVOLVMENT ......................................................... 8

III.    PLAINTIFFS FAIL TO STATE A CLAIM OF MALICIOUS PROSECUTION,
        FALSE ARREST OR FALSE IMPRISONMENT .............................................. 9

IV.     PLAINTIFFS FAIL TO STATE A DUE PROCESS CLAIM ........................... 14

V.      CLAIMS BASED UPON ACTS COMMITTED BEFORE NOVEMBER 6, 2013
        ARE BARRED BY THE TWO YEAR STATUTE OF LIMITATIONS FOR
        BRINGING PERSONAL INJURY CLAIMS IN DELAWARE ....................... 15

VI.     STATE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AND
        DELAWARE'S TORT CLAIMS ACT, 10 *DEL. C.* § 4001 ............................ 16

VII.    AS A DERIVATIVE CLAIM, THE LOSS OF CONSORTIUM CLAIM MUST
        BE DISMISSED ................................................................................................ 19

CONCLUSION ............................................................................................................ 20

## TABLE OF CITATIONS

**CASE**                                                                                                   **PAGE**

*Albright v. Oliver,*
    510 U.S. 266 (1994)...................................................................................................14

*Arguenta v. United States Immigration and Customs Enforcement,*
    643 F.3d 60 (3d Cir. 2011) .......................................................................................16

*Barkes v. First Corr. Med., Inc.,*
    766 F.3d 307 (3d Cir. 2014), *rev'd sub nom. Taylor v. Barkes,* 135 S.Ct. 2042
    (2015)..............................................................................................................17, 18

*Behrens v. Pelletier,*
    516 U.W. 299 (1996) ................................................................................................16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................7, 9

*Biddle v. Parker,*
    2015 WL 5190694 (D. Del. Sept. 4, 2015)..............................................................18

*Boykins v. Ambridge Area Sch. Dist.,*
    621 F.2d 75 (3d Cir. 1980) .........................................................................................8

*Brosseau v. Haugen,*
    543 U.S. 194 (2004)..................................................................................................18

*Buck v. Hampton Twp. Sch. Dist.,*
    452 F.3d 256 (3d Cir. 2006) .......................................................................................3

*DiBella v. Borough of Beachwood,*
    407 F.3d 599 (3d Cir. 2005) .....................................................................................14

*Evancho v. Fisher,*
    423 F.3d 347 (3d Cir. 2005) .......................................................................................8

*Estate of Smith v. Marasco,*
    318 F.3d 497 (3d Cir. 2003) .....................................................................................13

*Gilles v. Davis,*
    427 F.3d 197 (3d Cir 2005) ......................................................................................17

*Groman v. Twp. Of Manalapan,*
    47 F.3d 628 (3d Cir. 1995) .......................................................................................12

*Hall v. Pennsylvania State Police,*
    570 F.2d 86 (3d Cir. 1978) ...................................................................................8

*Hill v. Borough of Kutztown,*
    455 F.3d 225 (3d Cir. 2006) ...............................................................................15

*Holman v. Walls,*
    1989 WL 66636 (D. Del. June 13, 1989) ...........................................................17

*Hotaling v. LaPlante,*
    167 F. Supp. 2d 517 (N.D. N.Y. 2001)........................................................11, 18

*Johnson v. Knorr,*
    477 F.3d 75 (3d Cir. 2007) .................................................................................14

*King v. Deputy Atty. Gen. Del.,*
    616 F. App'x 491 (3d Cir. June 11, 2015)..........................................................13

*Kokotaylo v. Danberg,*
    2012 WL 70819 (D. Del. Jan. 9, 2012) ................................................................8

*Livingston v. Allegheny Cnty.,*
    400 Fed. App'x 659 (3d Cir. Nov. 8, 2010) .......................................................11

*Merkle v. Upper Dublin Sch. Dist.,*
    211 F.3d 782 (3d Cir. 2000) ....................................................................10, 11, 12

*Montanez v. Thompson,*
    603 F.3d 243 (3d. Cir. 2010) .........................................................................16, 17

*Moody v. Kearney,*
    380 F. Supp. 2d 393 (D. Del. 2005).....................................................................15

*Neefe v. Layfield,*
    2005 WL 2977782 (D. Del. Nov. 7, 2005)..........................................................12

*Nix v. Sawyer,*
    466 A.2d 407 (Del. Super. 1983) .........................................................................13

*Quartarone v. Kohl's Dep't Stores,*
    983 A.2d 949 (Del. Super. 2009)..........................................................................13

*Rizzo v. E.I. du Pont de Nemours & Co.,*
    1989 WL 135651 (Del. Super. Oct. 31, 1999)......................................................19

*In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*,
    184 F.3d 280 (3d Cir. 1999) ................................................................3

*Rode v. Dellarciprette*,
    845 F.2d 1195 (3d Cir. 1988) ..............................................................8

*Rogers v. Rodgers*,
    2010 WL 4937472 (D. Del. Nov. 30, 2010) ........................................8

*Sang Ken Him v. City of Chicago*,
    858 N.E.2d 569 (Ill. App. 2006) ....................................................11, 18

*Sherwood v. Mulvihill*,
    113 F.3d 396 (3d Cir. 1997) ..............................................................11

*Siwulec v. J.M. Adjustment Serv., LLC*,
    2012 WL 666649 (3d Cir Mar. 1, 2012) ..............................................7

*Swim v. Hendrick*,
    2013 WL 3992440 (W.D. Okla. Aug. 2, 2013) ................................8, 16

*Thomas v. Independence Twp.*,
    463 F.3d 285 (3d Cir. 2006) ..............................................................16

*Thorpe v. Little*,
    804 F. Supp. 2d 174 (D. Del. 2011)..................................................8, 9

*Torres v. McLaughlin*,
    163 F.3d 169 (3d Cir. 1998) ..............................................................14

*Trabal v. Wells Fargo Armored Serv. Corp.*,
    269 F.3d 243 (3d Cir. 2001) ........................................................13, 14

*Weinger v. McKeefery*,
    90 F. Supp. 3d 17 (E.D. N.Y. 2015) ..................................................18

*Wilson v. Russo*,
    212 F.3d 781 (3d Cir. 2000) ........................................................10, 12

*Woodyard v. County of Essex*,
    514 F. App'x 177 (3d Cir. Mar. 5, 2013) ........................................13, 14

*Wright v. City of Philadelphia*,
    409 F.3d 595 (3d Cir. 2005) ..............................................................10

## Other Authority

10 *Del. C.* § 4001 ......................................................................................................19

10 *Del. C.* § 8119 ......................................................................................................15

## NATURE AND STAGE OF THE PROCEEDING

On November 6, 2015, Plaintiffs Hans Scheing and Tina Webb-Scheing ("Plaintiffs") filed a Complaint alleging malicious prosecution, false arrest and false imprisonment, as well as "Monell" and due process claims relating to theft charges that were brought against Plaintiffs, but eventually dismissed. Seemingly in retaliation, as they feared they would do, Plaintiffs also sued the elderly couple (Frank and Winifred Vadala, the "Vadalas") who contracted with Delaware Septic Service, LLC ("DSS"), Mrs. Scheing's company and Mr. Scheing's employer, to replace a failed septic tank on their property. DSS performed a soil survey and then did nothing, not performing as promised, leaving the Vadalas for nearly two months with a leaking septic tank. Suing the Vadalas was not enough, however; they also sued their daughter, Frances Resto ("Resto"). Ignoring black-letter law and readily-verifiable facts, Plaintiffs also sued the Department of Natural Resources and Environmental Control ("DNREC"), a state, *not municipal*, agency, as well as several present and former DNREC employees, in both their official and individual capacities: DNREC Officer Casey Fountain ("Fountain"); Daniel Albanese ("Albanese"); Dave Schepens ("Schepens"); and Andrew Whitman ("Whitman," collectively the "State Defendants").

On December 15, 2015, DNREC and the State Defendants filed a motion to dismiss under Rules 12(b)(1) and (6). D.I. 4, 5. The Vadalas and Resto also filed a motion to dismiss. D.I. 6, 7.

On January 18, 2016, Plaintiffs filed their First Amended Complaint ("FAC"), rather than respond to the arguments raised by the motions. By and large, the FAC contains the same factual allegations as the original complaint. For good reason, however, the FAC does not contain claims against DNREC. It also dropped the Vadalas and Resto as defendants. Finally,

1

The FAC dropped the official capacity claims against the State Defendants.

However, because the FAC continues the same pleading deficiencies that existed in the original complaint and is otherwise barred, the State Defendants (sans DNREC) have again moved to dismiss the FAC pursuant to Rules 12(b)(1) and (6).  This is their Opening Brief in support of that motion.

## FACTUAL BACKGROUND

The following factual background is taken mostly from the FAC, which facts State Defendants accept as true only for purposes of the motion, but also from the arrest warrant, which is referenced in the FAC and is directly related to the argument that State Defendants lacked probable cause to arrest and prosecute Mr. Scheing (attached hereto as **Exhibit A**).[1]

On July 22, 2013, Mr. Scheing entered into a contract with the Vadalas for DSS to provide septic services and repairs to the Vadalas' home.  FAC at ¶ 10.  Mr. Scheing performed soil testing that day in order to determine the type of septic system that would be required.  *Id.* at ¶ 11.  Mr. Scheing allegedly provided "updates" to the Vadalas on "numerous" unspecified occasions regarding "ongoing services" and repairs to the property.  *Id.* at ¶ 12.  Despite these conclusory and nebulous allegations regarding ongoing services, neither the Complaint nor the FAC pled any facts elaborating on what actual work was performed other than soil testing (for good reason).

Nearly two months later, on September 10, 2013, Mrs. Vadala filed a complaint with DNREC that Plaintiffs failed to perform the contracted work.  FAC at ¶ 13.  Plaintiffs claim that Mrs. Vadala made this claim "falsely" presumably because of the fact that the soil test had been performed back on July 22, 2013.  *Id.*; *see also id.* ¶ 14 (alleging, upon information and belief, that Ms. Vadala told Albanese that nothing had been done under the contract).

On September 30, 2013, Mrs. Vadala met with Fountain to discuss her complaint.  FAC

---

[1]  Consideration of the warrant and related documents attached hereto is appropriate without converting the motion into one under Rule 56.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that it is appropriate to consider on a motion to dismiss matters incorporated by reference or integral to a claim, items subject to judicial notice, and matters of public record); *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).

at ¶ 15.   She informed Fountain that she had paid a total of $875 to DSS to perform a soil evaluation and, separately, $7,000 to replace the home's failed septic system.   Ex. A, ¶¶ 1-2. Mrs. Vadalas informed Fountain that she was concerned because no work had been done by then to repair or replace the tank.   *Id.* at ¶ 2.   She further informed Fountain that she had spoken with Mr. Scheing recently about the delay and was told at least twice that Mr. Scheing was waiting on permits from DNREC and that he "expected them any day" and that the delay was therefore because of DNREC, not him.   *Id.*   Fountain met again with Mrs. Vadalas, at her home, and went over the contract and reviewed other documentation, including the cancelled checks.   *Id* at ¶ 3; *see also* FAC at ¶ 15 (referencing multiple meetings between Mrs. Vadalas and Fountain).   Mrs. Vadalas said she was concerned about complaining about Mr. Scheing, because she feared that he might retaliate against her (a fear that, by this lawsuit, came to fruition).   Ex. A, ¶ 3.

Fountain then contacted DNREC's Water Resources Office and spoke with the individual who approves septic permits.   Ex. A, ¶ 4.   Fountain was informed that no permit application had been filed by Mr. Scheing or anyone else for Mrs. Vadalas' property.   *Id.*   Fountain was further informed that, for obvious reasons, DNREC mandates that septic permits for leaking septic tanks be issued in 10 days.   *Id.*   Accordingly, Fountain had determined that, not only was work not being performed on a leaking tank, but that Mr. Scheing was lying to Mrs. Vadalas about the reason for the delay.

On or about October 11, 2013, Plaintiffs received the soil report from their expert.   FAC at ¶ 16.   Mr. Scheing then left a voicemail with the Vadalas asking them to sign a permit application that would then be submitted to DNREC along with the soil report.   *Id.* at ¶ 17.

On or about October 14, 2013, Fountain filed a warrant for Mr. Scheing.   FAC. at ¶ 18; Ex. A.   Plaintiffs claim that he did so without first verifying whether Mrs. Vadala's complaint

was "accurate." FAC at ¶ 18. In direct contradiction to the Warrant and the FAC (¶ 15), Plaintiffs claim Fountain filed the Warrant without doing any "substantive investigation." *Id.*

Plaintiffs then allege that, on or about October 16, 2013, two days after the issuance of the arrest warrant, the "soil report" was "turned over" to and marked received by DNREC. FAC at ¶¶ 19, 20. Fountain then "contacted" Mr. Scheing and told him that he wanted to "talk about some contracts." *Id.* at ¶ 21. Fountain purportedly told Scheing that he did not need a lawyer and never mentioned that he was being charged with theft or home improvement fraud. *Id.* Plaintiffs claim that "later," while at a police station, Fountain told Plaintiff that there was nothing he could say or do to prevent Fountain from arresting Plaintiff, despite Mr. Scheing telling Fountain that he did the soil test. Fountain "thereafter" arrested Scheing. *Id.* at ¶ 22[2].

On November 6, 2013, the criminal charges against Mr. Scheing were dismissed by the Court of Common Pleas. FAC at ¶ 26. Nonetheless, in January 2014, Mr. Scheing was indicted by a grand jury. *Id.* at ¶ 27. The indictment, attached hereto as **Exhibit B**, alleged two felonies against Mr. Scheing: Theft (over $1500 and victim is 62 years of age or older), 11 *Del. C.* § 841(c)(2), and Home Improvement Fraud (where victim is 62 or older), 11 *Del. C.* § 916(d)(2). Those claims were dismissed on September 16, 2014. FAC at ¶ 31[3].

The FAC contains a curious allegation regarding Defendant Schepen. Other than identifying him as a party and an employee of DNREC, there are *no factual allegations*

---

[2] Though unrelated to any asserted claim, on or about October 22, 2013, DNREC issued a press release stating that "Plaintiff" was being charged with theft and home improvement fraud. Compl. at ¶ 23. The release misrepresented that Mr. Scheing, not his wife, was the owner of DSS and that no work had been performed at the property. *Id.*

[3] Even though the Vadalas and Resto are no longer parties, Plaintiffs continue to make allegations against them in the FAC, claiming that Resto knew that Mr. Scheing conducted the soil sample and that he otherwise did "nothing wrong." FAC at ¶28. Plaintiffs claim that Resto "lied and/or failed to divulge" this "exculpatory evidence" to the police, though the Complaint *does not* allege that Resto ever met with any police or DNREC officer, including any of the State Defendants. *Id.*

*whatsoever* against Schepen.   Rather, Plaintiff alleges in conclusory terms, and only "upon information and belief," that "Defendants conspired against Plaintiffs towards benefiting Schepens' son's competing septic business in the same area." FAC at ¶ 30.  That is the sum total of factual allegations against Schepen.

There are even less factual allegations against Albanese and Whitman.  There are no allegations against Albanese, other than the assertion that Albanese, essentially, was the recipient of information conveyed by Mrs. Vadala.  *See* FAC at ¶¶ 13, 14, 29.  The Warrant shows that Albanese told Fountain that no permit application had been filed for the property. Ex. A, ¶ 4.  As with the original Complaint, there are *no* factual allegations in the FAC against Whitman.

The original Complaint contained four counts: (1) malicious prosecution/false arrest/false imprisonment; (2) "Monell"; (3) due process under the "IV and XIV" amendments to the United States Constitution; and (4) loss of consortium.

In the FAC, Plaintiff has dropped the *Monell* claim and seemingly combined the malicious prosecution and due process claims into a single count (Count I).  Plaintiffs also kept the loss of consortium count (Count II).  As with the Complaint, the FAC seeks $75,000 in damages and unspecified "injunctive relief." FAC at § IV.

**ARGUMENT**

## I.    APPLICABLE STANDARDS

A complaint need not contain detailed factual allegations, but it must contain "'sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Siwulec*

*v. J.M. Adjustment Services, LLC*, 2012 WL 666649, at *2 (3d Cir. Mar. 1, 2012) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555

(2007). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to

relief above the speculative level....'" *Siwulec*, at *2 (quoting *Victaulic Co. v. Tieman*, 499 F.3d

227, 234 (3d Cir.2007)); *see also Twombly*, 550 U.S. at 555. "Accordingly, to satisfy the

plausibility standard, the complaint must indicate that a defendant's liability is more than 'a

sheer possibility.'" *Siwulec*, at *2 (quoting *Iqbal*, 129 S.Ct. at 1949). "Where a complaint

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

between possibility and plausibility of entitlement to relief.'" *Id.*

"Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a

district court must first identify all factual allegations that constitute nothing more than 'legal

conclusions' or 'naked assertions.'" *Siwulec*, at *2 (quoting *Twombly*, 550 U.S. at 555, 557).

"Such allegations are 'not entitled to the assumption of truth' and must be disregarded for

purposes of resolving a 12(b)(6) motion to dismiss." *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). The

Court must then "identify 'the "nub" of the "'complaint – the well-pleaded, nonconclusory

factual allegation[s].'" *Id.* Finally, assuming these allegations as true, the court must then

determine whether the complaint states a plausible claim for relief. *Id.* In addition to other

defenses discussed below, the FAC does not pass scrutiny under this Rule 12(b)(6) standard.

## II.   ALBANESE, SCHEPENS AND WHITMAN MUST BE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT.

Counts I is brought pursuant to 42 U.S.C. § 1983.  "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  "To state a plausible § 1983 claim, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Swim v. Hendrick*, 2013 WL 3992440, at *2 (W.D. Okla. Aug. 2, 2013) (quoting *Iqbal*, 556 U.S. 662).  A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations.  *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005); *Boykins v. Ambridge Area Sch. Dist.,* 621 F.2d 75, 80 (3d Cir. 1980); *Hall v. Pennsylvania State Police,* 570 F.2d 86, 89 (3d Cir. 1978).   Personal involvement is the touchstone for establishing § 1983 liability. *Kokotaylo v. Danberg*, 2012 WL 70819, at *4 (D. Del. Jan. 9, 2012); *see also Rogers v. Rodgers*, 2010 WL 4937472 (D. Del. Nov. 30, 2010); *see Thorpe v. Little*, 804 F. Supp. 2d 174, 184 (D. Del. 2011) ("[P]ersonal involvement by a defendant remains the touchstone for establishing liability of a plaintiff's constitutional right.").

Plaintiffs allege next-to-no facts against State Defendants Albanese, Schepens and Whitman and they must, therefore, be dismissed.  With respect to Albanese, Plaintiffs allege only that Mrs. Vadala contacted him prior to filing her allegedly false complaint with DNREC.  The Warrant shows that Albanese assisted Fountain in determining that Mr. Scheing had lied about the delay in doing the work.  Plaintiffs do not allege that Albanese (as opposed to Fountain) did *anything* with that information.  Plaintiffs' claim against Schepens and Whitman is on even shakier ground.  Indeed, Plaintiffs allege *no facts* against Whitman.  They likewise allege no facts against Schepens, except other than to state in conclusory terms that, "upon information and

belief," defendants conspired against Plaintiffs towards benefiting Schepens' son's competing business. This fails to state a claim against Schepens. The bleakness of factual allegations is more remarkable because State Defendants previously moved to dismiss the Complaint, raising the exact argument above, but the FAC still fails to assert factual allegations against these defendants. In fact, the FAC appears to be identical to the Complaint (except that it has deleted claims and allegations against now-dismissed parties).

Further, and as argued in the first Motion to Dismiss, the State Defendants note that Plaintiffs have not even asserted a separate conspiracy claim against any defendant. Even if they did, the FAC still fails to contain plausible facts supporting such a claim. "To state a conspiracy claim under § 1983, plaintiff must show that 'persons acting under color of state law conspired to deprive him of a federally protected right.'" *Thorpe*, 804 F. Supp. 2d at 188 (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 254 (3d Cir.1999)). There must also be evidence of actions taken in concert by defendants with the specific intent to violate that right. *Thorpe*, 804 F. Supp. 2d at 188. "A § 1983 conspiracy claim only arises, however, when there has been an actual deprivation of a right." *Id.* Plaintiffs do not allege any plausible facts showing that any defendants conspired to deprive Plaintiffs of a federally protected right or actions taken in concert with specific intent to violate a right. *See also Twombly*, 550 U.S. 544 (setting forth standard for pleading civil conspiracy under Fed. R. Civ. P. 8). Albanese, Schepens and Whitman should be dismissed.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM OF MALICIOUS PROSECUTION, FALSE ARREST OR FALSE IMPRISONMENT.

The gist of the false arrest and imprisonment claim appears to be that Fountain lacked probable cause for the arrest, even though Plaintiffs acknowledge that Fountain met with Mrs. Vadala on multiple occasions (FAC at ¶ 15) and obtained an arrest warrant. FAC at ¶ 18; Ex. A.

Further, after the charges were initially dismissed, the State obtained a grand jury indictment against Mr. Scheing. FAC at ¶ 27; Ex. B. Plaintiffs appear to base their § 1983 claim upon an argument that, despite having an arrest warrant and an indictment, Fountain violated Mr. Scheing's Fourth Amendment rights by not confirming Mrs. Vadala's claims and conducting a further investigation. *See, e.g.*, FAC at ¶ 18 (alleging Fountain failed to verify the accuracy of Mrs. Vadala's complaint).

A plaintiff may succeed on a § 1983 action for false arrest made pursuant to a warrant if there is evidence that the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant and (2) that such statements or omissions are material, or necessary, to the finding of probable cause.'" *Wilson v. Russo,* 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill,* 113 F.3d 396, 399 (3d Cir. 1997)). Plaintiffs do not allege facts showing that any State Defendant, including Fountain, made false statements under this standard to obtain an arrest warrant.

The Third Circuit has ruled that "[i]f 'at the moment the arrest was made … the facts and circumstances within [the defendant's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that the plaintiff had violated the law, probable cause is present." *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 789 (3d Cir. 2000). The kind and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest. *Wilson,* 212 F.3d at 789. It is also irrelevant to the issue of probable cause whether a person is later acquitted of the crime for which he was arrested. *Wright v. City of Philadelphia,* 409 F.3d 595, 602-04 (3d Cir. 2005). The court may conclude that probable cause exists as a matter of law if the evidence reasonably would not

support a contrary factual finding. *Sherwood,* 113 F.3d at 401. Plaintiffs acknowledge that

Fountain met with the victim, Mrs. Vadala, on multiple occasions (FAC at ¶ 15) to discuss her

complaint. These meetings alone are sufficient to give Fountain probable cause for an arrest.

*See, e.g., Livingston v. Allegheny Cnty.,* 400 F. App'x 659, 664, 666 (3d Cir. Nov. 8, 2010)

(noting that an investigation may have benefited from additional interviews, but holding

probable cause existed where officer had statements from the victim, her sister and a forensic

interview); *Sang Ken Him v. City of Chicago,* 858 N.E.2d 569, 575-75 (Ill. App. 2006) (noting

that officer could have relied upon victim's statement to establish probable cause); *Hotaling v.*

*LaPlante,* 167 F. Supp. 2d 517, 521 (N.D. N.Y. 2001) (police officer may rely upon statements

of victims and witnesses to determine existence of probable cause). That she did not take some

additional action, unspecified by Plaintiff, to corroborate Mrs. Vadala's complaint, does not

mean that Fountain lacked probable cause for an arrest or otherwise violated Mr. Scheing's

rights.

*Merkle* demonstrates that Plaintiffs have failed to state valid claims. There, Merkle, a

teacher, was arrested after another teacher, Thomas, observed Merkle removing school supplies

to her car outside the school. *Merkle,* 211 F.3d at 786. When Thomas questioned Merkle about

her actions, Merkle advised that she believed the supplies were no longer useful and she intended

to donate the items. *Id.* Thomas was later advised to call the police department and a detective

took her statement about the incident. *Id.* at 787. Based solely on the statement obtained from

Thomas, including a statement that Merkle had admitted stealing supplies, the detective arrested

Merkle. *Id.* On appeal, the Third Circuit ruled that the police officer "possessed knowledge of a

credible report from a credible eyewitness" that established sufficient facts for probable cause.

*Id.* at 790. The Court in *Merkle* also rejected a claim, similar to Plaintiffs' claim here, that the

11

police had a duty to interview other witnesses or conduct additional investigation. *Id.* at n. 8; *see also Wilson*, 212 F.3d at 793 n11 ("'[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence whether the claim is based on mistaken identity or a defense such as lack of requisite intent.  Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error free investigation of such a claim.'") (quoting *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979)).  Fountain clearly had probable cause to arrest Mr. Sheing

To the extent the FAC intends to assert a separate false imprisonment claim, which is far from clear, the claim also fails.  Unlawful imprisonment under Delaware law requires proof of "knowingly and unlawfully restraining another person under circumstances which expose that person to the risk of serious physical injury." *Neefe v. Layfield*, 2005 WL 2977782, at *4 n.4 (D. Del. Nov. 7, 2005) (citing 11 *Del. C.* § 782).  Under Third Circuit precedent, "an arrest based on probable cause [can] not become the source of a claim for false imprisonment [or unlawful arrest]." *Groman v. Twp of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).  *See also Neefe*, at *4 n. 4 ("Because the arrest was lawful, Plaintiff's unlawful imprisonment claim must fail.").  Plaintiffs' claim for false imprisonment fails for the same reason the false arrest claim fails to state a claim.

Finally, Plaintiffs fail to state a claim for malicious prosecution.  To prove malicious prosecution under § 1983, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty

consistent with the concept of seizure as a consequence of a legal proceeding. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). These same five elements are required to prove a malicious prosecution claim under Delaware law. *Nix v. Sawyer*, 466 A.2d 407, 411 (Del. Super. 1983). The tort of malicious prosecution is looked upon with disfavor in Delaware because there is a public policy to provide an open forum for those who wish to prosecute. *Quartarone v. Kohl's Dep't Stores*, 983 A.2d 949, 955 (Del. Super. 2009). State Defendants concede that the first and second elements of the claim are adequately pled with respect to Fountain. However, the remaining elements have not been.

Plaintiffs fail to allege plausible facts establishing the third and fourth elements as there is no evidence from which a fact finder could conclude that any defendant acted without probable cause and maliciously or with an improper purpose. Indeed, the word "malice" does not even appear in the FAC (in spite of the original Motion to Dismiss pointing out this ommission). At the time of Mr. Scheing's arrest, DNREC investigators had multiple meetings with the crime victim. Plaintiffs' contention appears to be that Fountain, and possibly other defendants, should not have accepted Mrs. Vadala's reports and should have conducted a further investigation, and to do otherwise constitutes malice. As discussed *supra* pp. 9-12, this argument is legally flawed. *See also Quartarone*, 983 A.2d at 959-60 (sufficient probable cause supported the detention of the plaintiff despite his claimed innocence and allegedly reasonable explanations for his conduct).

On top of having Mrs. Vadala's statements, the grand jury indictment is prima facie evidence of probable cause to prosecute. *King v. Deputy Atty. Gen. Del.*, 616 F. App'x 491, 495 (3d Cir. June 11, 2015); *Woodyard v. County of Essex*, 514 F. App'x 177, 183 (3d Cir. Mar. 5, 2013); *see also Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001)

(noting that an indictment establishes probable cause "by definition."). This presumption will only be overcome by evidence that the presentment was procured by fraud, perjury or other corrupt means. *Woodyard*, 514 F. App'x at 177. There are no plausible facts pled showing that any State Defendant procured the indictment by fraud, perjury or other corrupt means.

Finally, Plaintiffs fail to establish the fifth element, namely that Mr. Scheing suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. The Third Circuit has held that a malicious prosecution claim arising under the Fourth Amendment requires "[p]retrial custody [or] some onerous types of pretrial, non-custodial restrictions." *See DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005). *DiBella* also ruled that the plaintiffs' "attendance at trial did not [itself] qualify as a Fourth Amendment seizure." *Id.* at 603; *see also Johnson v. Knorr*, 477 F.3d 75, 85 n.14 (3d Cir. 2007). Plaintiffs do not allege any period of incarceration or other facts showing that Mr. Scheing suffered some other onerous type of pretrial, noncustodial restrictions.

## IV.   PLAINTIFFS FAIL TO STATE A DUE PROCESS CLAIM.

It is unclear whether Plaintiffs now separately assert a "Due Process" claim since, unlike the original Complaint, the FAC combines the malicious prosecution and due process claims into one count. To the extent Plaintiffs intend to assert a substantive due process claim under the *Fifth* and Fourteenth Amendments, that claim cannot be brought. *See Albright v. Oliver*, 510 U.S. 266 (1994) (holding that substantive due process cannot support a § 1983 claim of malicious prosecution); *Torres v. McLaughlin*, 163 F.3d 169, 172 (3d Cir. 1998) (discussing *Albright*). To the extent Plaintiffs intended to assert a *procedural* due process claim and to the extent that claim is not already subsumed in Plaintiffs' false arrest and malicious prosecution claim, they have failed to state a valid constitutional claim. To state a claim under § 1983 for

deprivation of procedural due process rights, Plaintiffs must show that they were deprived of "life, liberty, or property" interests protected by the Fourteenth Amendment and that the procedures available did not provide "due process of the law." *Hill v. Borough of Kutztown,* 455 F.3d 225, 233–34 (3d Cir. 2006). Plaintiffs have not identified a deprivation of a particular liberty or property interest sufficient to support a procedural due process claim. Further, they have not alleged what additional process was due. To the extent any due process claim is based upon the alleged failure to conduct further investigation, State Defendants incorporate the arguments raised above.

Finally, Plaintiffs fail to state a cognizable Fourth Amendment claim. State Defendants have already addressed above the contention that Fountain lacked probable cause regarding Mr. Scheing's arrest. For the same reasons that Plaintiffs' fail to state a malicious prosecution or false arrest claim, any Fourth Amendment claim fails as well.

## V.  CLAIMS BASED UPON ACTS COMMITTED BEFORE NOVEMBER 6, 2013 ARE BARRED BY THE TWO YEAR STATUTE OF LIMITATIONS FOR BRINGING PERSONAL INJURY CLAIMS IN DELAWARE.

To the extent Plaintiffs assert a false arrest or detention claim against any State Defendant, separate from a malicious prosecution claim, those claims are time barred. Claims under 42 U.S.C. § 1983 are governed by Delaware's two-year statute of limitations for personal injuries. *See* 10 *Del. C.* § 8119; *Moody v. Kearney*, 380 F. Supp. 2d 393, 397 (D. Del. 2005) (Section 1983 claims in Delaware are subject to the two-year statute of limitations in 10 *Del. C.* § 8119). It appears that Mr. Scheing was arrested and detained on or about October 22, 2013 (*see* FAC at ¶¶ 21-23), more than two years prior to suit being filed on November 6, 2015. Though State Defendants recognize that an otherwise cognizable *malicious prosecution* claim is not ripe until the charges are dismissed or a plaintiff is otherwise successful on the underlying

criminal charge, to the extent Plaintiffs assert separate claims for the arrest and detention (if there was one), those claims are time-barred.

## VI.    STATE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AND DELAWARE'S TORT CLAIMS ACT, 10 *DEL. C.* § 4001.

The doctrine of qualified immunity shields government actors acting within the scope of their discretionary authority for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).    "Factual allegations are particularly important in a § 1983 case where qualified immunity is asserted."   *Swim*, 2013 WL 3992440, at *2.  "The Supreme Court . . . expressly rejected Iqbal's theory that the pleading standards should be tempered where discovery purportedly was to be structured in such a way as to preserve the qualified immunity defense." *Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 1953-54).  "[T]he 'basic thrust' of qualified immunity is to free officials from the concerns and burdens of litigation, including discovery."  *Id.* (citing *Iqbal*, 556 U.S. at 1954).  Because qualified immunity bestows immunity from suit, the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage of litigation.  *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006).  "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."   *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

For Plaintiffs to overcome qualified immunity, the following elements must be established: (1) the defendants' action violated a constitutional right; and (2) the constitutional right, at issue, if violated was clearly established in light of the specific factual circumstances of

the particular case. *Montanez v. Thompson*, 603 F.3d 243 250 (3d. Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 230-31 (2009)). The key issue for purposes of qualified immunity is whether State Defendants' actions were "objectively reasonable in light of the facts and circumstances confronting [them.]" *Holman v. Walls*, 1989 WL 66636, at *9 (D. Del. June 13, 1989) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "The qualified immunity standard 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those *who knowingly violate the law*.'" *Gilles v. Davis*, 427 F.3d 197, 204 (3d Cir. 2005) (emphasis added) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

In *Barkes*, the Third Circuit recognized the importance of clearly defining the constitutional right at issue in a qualified immunity analysis. The court noted that "[c]rucial to the 'clearly established' inquiry is the level of generality at which the right is defined. A constitutional right is not 'clearly established simply because of the existence of a broad imperative like the one against 'unreasonable ... seizures,'" but nor must there be 'a case directly on point [if] existing precedent ... [has] placed the statutory or constitutional question beyond debate.'" *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 326 (3d Cir. 2014), *rev'd sub nom. Taylor v. Barkes*, 135 S.Ct. 2042 (2015) (citations omitted and alterations in original). The right must be "sufficiently bounded that it gives 'practical guidance' to officials on the ground." *Barkes*, 766 F.3d at 326. "Put another way, the right asserted cannot be so abstract that *any* transgression violates a clearly established right, thereby evaporating 'the balance ... between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties.'" *Id.* The "'ultimate question,'" the court concluded "is whether the defendant had 'fair warning' that his conduct deprived his victim of a constitutional right." *Id.* (emphasis and alterations in original).

Put another way, the "'clearly established' game is won or lost on how broadly or narrowly one defines the right at issue." *Barkes*, 766 F.3d at 326; *see also Biddle v. Parker*, 2015 WL 5190694, at *3 (D. Del. Sept. 4, 2015) (citing *Taylor*, 135 S.Ct. at 2045). As in *Barkes* and *Biddle*, in order to overcome qualified immunity to sue the State Defendants individually, Plaintiffs need to assert the violation of a clearly established constitutional right, and they must define that right with sufficient particularity to give state officials practical guidance and fair warning. *Barkes*, 766 F.3d at 326. It cannot be so abstract, such as the right to be free from malicious prosecution or false arrest. *Cf. Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (noting that right to be free from excessive force under the Fourth Amendment is cast at a high level of generality). Here, Plaintiffs appear to be contending that the constitution is violated if a state officer does not conduct some *additional,* amorphous investigation (other than interviewing a complaining party) before seeking an arrest warrant and otherwise participating in the criminal investigation of a suspect. Plaintiffs cannot point to a Supreme Court case or a robust consensus of cases of persuasive authority establishing that right. Indeed, the law appears to be to the contrary. *See, e.g.*, *Sang Ken Him v. City of Chicago*, 858 N.E.2d 569, 575-75 (Ill. App. 2006); *Hotaling v. LaPlante*, 167 F. Supp. 2d 517, 517 (N.D. N.Y. 2001); *see also Weinger v. McKeefery*, 90 F. Supp. 3d 17, 39 (E.D. N.Y. 2015) (officer entitled to qualified immunity in malicious prosecution claim even where probable cause is lacking, as long as "arguable" probable cause existed). Plaintiffs also ignore the fact, documented in the Warrant, that Fountain did indeed perform an investigation beyond the multiple meetings with the victims. Accordingly, if the claims against the State Defendants are not dismissed, the State Defendants are entitled to immunity.

Again, as with other arguments raised in the original motion to dismiss, Plaintiffs again

failed to clarify the clearly-established constitutional right they believe has been violated by each

State Defendant, despite having an opportunity to do so through amendment.[4]

## VII.   AS A DERIVATIVE CLAIM, THE LOSS OF CONSORTIUM CLAIM MUST BE DISMISSED.

A spouse's claim for loss of consortium is derivative of the other spouse's primary claim.

*Rizzo v. E.I. du Pont de Nemours & Co.*, 1989 WL 135651, at *4 (Del. Super. Oct. 31, 1999).

Accordingly, this count is viable to Mrs. Scheing, only to the extent Mr. Scheing has a separate

valid cause of action. *Id.* Because he does not, this claim fails as well.

---

[4] To the extent not barred by qualified immunity, the claims are barred by Delaware's Tort Claims Act, 10 *Del. C.* § 4001, which bars claims against state employees unless certain elements are pled (and proven), including, among other things, that a state employee acted with gross or wanton negligence. Plausible facts are not pled establishing that immunity is not available to the State Defendants under § 4001.

19

## CONCLUSION

**WHEREFORE,** for the above reasons, State Defendants respectfully request that the FAC be dismissed with prejudice and that State Defendants be granted costs and such other relief as the Court deems just and equitable.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Joseph C. Handlon*
Joseph C. Handlon (#3952)
Ryan P. Connell (#5423)
Deputy Attorneys General
Department of Justice
Carvel State Bldg., 6th Fl.
820 N. French Street
Wilmington, DE  19801
(302) 577-8400

Dated: January 29, 2016                    *Attorneys for State Defendants*

20