IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HANS SCHEING and TINA WEBB-SCHEING, ) ) ) Plaintiffs, ) ) v. ) ) DEPARTMENT OF NATURAL RESOURCES ) AND ENVIRONMENTAL CONTROL, *et al.*, ) ) Defendants. ) | Civ. No. 15-1028 RGA |

**MEMORANDUM**

This action arises out an agreement whereby Plaintiffs Hans and Tina Webb-Scheing were hired by the Vadalas, an elderly couple, to replace a failed septic tank at their home. When it appeared that no work was going to be done, Mrs. Vadala filed a complaint with the Department of Natural Resources and Environmental Control ("DNREC"). DNREC acted on the complaint by arresting Mr. Scheing and prosecuting claims against him in court. Plaintiffs were unhappy with how events unfolded, claiming that they had done nothing wrong. Accordingly, Plaintiffs filed suit in this court for, among other things, false arrest, false imprisonment, and malicious prosecution. Currently before the court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 12). For the reasons that follow, Defendants' motion is GRANTED. Plaintiffs' request for leave to amend is GRANTED.

**I. PROCEDURAL HISTORY**

On November 6, 2015, Plaintiffs filed a complaint with four counts: (i) malicious prosecution, false arrest, and false imprisonment; (ii) "Monell" claims; (iii) violation of due

1

process under the Fourth and Fourteenth Amendments of the U.S. Constitution; and (iv) loss of consortium. (D.I. 1). The original complaint named as defendants Frank and Winifred Vadala, their daughter Frances Resto, who owns the property where the Vadalas live, DNREC, and the following current and former DNREC employees in both their official and individual capacities: Daniel Albanese, Dave Schepens, Andrew Whitman, and Officer Casey Fountain. The complaint contains no allegations regarding the roles, responsibilities, or titles of defendants Albanese, Schepens, and Whitman.

Plaintiffs responded to Defendants' first motion to dismiss (D.I. 4 & 6) by filing their first amended complaint (D.I. 10). The amended complaint dropped the Vadalas, Resto, and DNREC as defendants, leaving the DNREC employees as the only remaining defendants in this action. The amended complaint also dropped the claims against the DNREC employees in their "official" capacity, proceeding against those defendants only in their "individual" capacity. Finally, the amended complaint dropped the "Monell" claims and combined the due process and malicious prosecution claims into a single count (Count I), in which Hans Scheing is the Plaintiff. Plaintiffs kept the loss of consortium count (Count II), which purports to be on behalf of both Plaintiffs. The factual allegations in the complaint otherwise remained essentially the same. In briefing on this motion, Plaintiffs withdrew their claim for a due process violation under Count I, relying instead "exclusively on their cause for malicious prosecution." (D.I. 16 at 10).

## II. BACKGROUND

On July 22, 2013, the Vadalas contracted with Delaware Septic Service, LLC (Mrs. Scheing's company and Mr. Scheing's employer) to repair or replace a failed septic tank at the Vadalas' home. (D.I. 10 ¶ 10). Mr. Scheing performed soil testing that day in order to determine the type of septic system that would be required. (*Id.* at ¶ 11). Afterwards, Mr. Scheing

2

purportedly provided updates to the Vadalas on numerous occasions regarding ongoing services and repairs to the property. (*Id*. at ¶12).

Approximately two months later, on September 10, 2013, Mrs. Vadala filed a complaint with DNREC claiming that Plaintiffs failed to perform the contracted work. (*Id*. at ¶ 13). Plaintiffs allege that Mrs. Vadala made this claim "falsely." (*Id*.). The amended complaint also alleges that before Mrs. Vadala filed her complaint with DNREC, she contacted Albanese claiming that nothing had been done to their house pursuant to the contract with Plaintiffs. (*Id*. at ¶ 14). The amended complaint does not allege why Mrs. Vadala contacted Albanese in particular, how Albanese responded to Mrs. Vadala's allegations, or what Albanese did with the information she provided, if anything.

On or about October 14, 2013, Officer Fountain obtained a warrant for Mr. Scheing's arrest for two felony charges. (*Id*. at ¶ 18; *see* D.I. 5-1). Despite allegations in the amended complaint that Mrs. Vadala and Officer Fountain met on "more than one occasion" in September 2013 to discuss her complaint, Plaintiffs claim Officer Fountain filed the warrant without first verifying whether Mrs. Vadala's complaint was "accurate."[1] (D.I. 10 ¶¶ 15, 18).

Plaintiffs allege that a few days before the issuance of the arrest warrant, Plaintiffs received the soil report from their expert. (*Id*. at ¶ 16). Mr. Scheing then left a voicemail with the Vadalas asking them to sign a permit application that would be submitted to DNREC along with the soil

---

[1] Relying on facts put forth in the warrant, Defendants' opening brief provided additional information regarding Officer Fountain's investigation that was not alleged in the complaint. According to Mrs. Vadala, Mr. Scheing said that he was waiting on permits from DNREC and that the delay was therefore because of DNREC, not him. (D.I. 13 at 4). Officer Fountain contacted DNREC's Water Resources Office and was informed that no permit application had been filed by Mr. Scheing or anyone else for the Vadalas' property. (*Id*.). Officer Fountain concluded that, not only was work not being performed on a leaking tank, but that Mr. Scheing was not being forthright about the reason for the delay. (*Id*.).

3

report. (*Id.* at ¶ 17). A few days after the issuance of the arrest warrant, the soil report was "turned over" to and marked received by DNREC. (*Id.* at ¶¶ 19, 20).

Around October 21, 2013, Officer Fountain contacted Mr. Scheing and told him that she wanted to "talk about some contracts." (*Id.* at ¶ 21). Officer Fountain purportedly told Mr. Scheing that he did not need a lawyer and never mentioned that he was being charged with theft or home improvement fraud. (*Id.*). Plaintiffs claim that later, while at a police station, Mr. Scheing told Officer Fountain that he did the soil test. (*Id.* at ¶ 22). But Officer Fountain said that there was nothing Mr. Scheing could say or do to prevent his arrest, and arrested him. (*Id.*).

On November 6, 2013, the criminal charges against Mr. Scheing were dismissed by the Court of Common Pleas. (*Id.* at ¶ 26). Then, in January 2014, Mr. Scheing was indicted by a grand jury on four felony charges, including theft and home improvement fraud. (D.I. 5-2). Those claims were dismissed on September 16, 2014. (D.I. 10 ¶¶ 27, 31).

The amended complaint contains no allegations regarding the how, what, when, or why of any involvement by Schepens or Whitman in either Mrs. Vadala's complaint or Mr. Scheing's arrest and prosecution. The entirety of the allegations regarding Schepens and Whitman is that, along with Officer Fountain and Albanese, they "knew Hans Scheing had conducted a soil sample at the property, and that Hans had done nothing wrong." (*Id.* at ¶ 29). The amended complaint does not allege what Albanese, Schepens, or Whitman did with that knowledge, or, if they failed to act, what duty they had to act because of that knowledge. Finally, the amended complaint alleges that these defendants "conspired against Plaintiffs towards benefiting Schepens' son's competing septic business (in the same area)." (*Id.* at ¶ 30). There are no other allegations regarding the conspiracy and no claim for conspiracy.

### III. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). A "court ruling on a motion to dismiss may not consider matters extraneous to the pleadings," except a court may consider documents "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis and internal quotation marks omitted).

### IV. DISCUSSION

Defendants set forth numerous grounds for dismissal in their opening brief, most of which Plaintiffs did not address in their opposition. The lack of a substantive response to most of Defendants' arguments makes it difficult to find that Defendants' motion lacks merit. Accordingly, as discussed below, the claims against Albanese, Schepens, and Whitman must be dismissed for failure to allege any personal involvement. This leaves only Officer Fountain in her

5

individual capacity. Her personal involvement is adequately alleged, but the claims against her for false arrest, false imprisonment, and malicious prosecution must nevertheless be dismissed for failure to allege essential elements of the claims. Finally, if the complaint is dismissed, Plaintiffs have requested leave to amend. (D.I. 16 at 8).

### A. Lack of Personal Involvement

Plaintiffs did not respond to Defendants' argument that the claims against Albanese, Schepens, and Whitman must be dismissed for failure to allege any personal involvement, suggesting that Plaintiffs concede the point. Regardless, I agree with the substance of Defendants' argument. Count I is brought pursuant to 42 U.S.C. § 1983. (D.I. 10 at ¶ 45). Accordingly, the Defendants "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* at 1208. It is insufficient that a defendant was simply employed at the government agency where the underlying grievances arose. *Id.* Finally, allegations of participation, or actual knowledge and acquiescence, "must be made with appropriate particularity." *Id.* The complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Plaintiffs' amended complaint contains next-to-no facts regarding Albanese, Schepens and Whitman. With respect to Albanese, Plaintiffs allege only that Mrs. Vadala contacted him prior to filing her complaint with DNREC. Plaintiffs do not allege that Albanese (as opposed to Officer Fountain) did anything with that information. Plaintiffs' claim against Schepens and Whitman is on even shakier ground. Plaintiffs allege no facts against either defendant other than to state in a

6

single, conclusory sentence that they conspired against Plaintiffs to benefit Schepens' son's competing business. But the amended complaint contains no specific factual allegations regarding a "combination, agreement, or understanding among all or between the defendants to plot, plan or conspire to carry out the challenged conduct." *Wood v. Williams*, 568 F.App'x 100, 107 (3d Cir. June 4, 2014) (affirming dismissal of § 1983 civil conspiracy claim where these allegations were lacking). Accordingly, the amended complaint fails to allege any personal involvement of Albanese, Schepens and Whitman, and those defendants must be dismissed.

### B. False Arrest, False Imprisonment, and Malicious Prosecution

The gist of Plaintiffs' false arrest, false imprisonment, and malicious prosecution claim appears to be that Defendants conducted an insufficient investigation before obtaining the arrest warrant and grand jury indictment. (D.I. 10 ¶¶ 18, 29, 33). However, this alone is not enough where Plaintiffs fail to plead essential elements of each claim.

A plaintiff will succeed on a § 1983 action for false arrest made pursuant to a warrant only if there is evidence that the officer "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). The amended complaint, however, contains no allegations, not even in conclusory terms, that Officer Fountain made false statements[2] or omitted exculpatory information in her application for the arrest warrant. Plaintiffs' complaint seems to be more that Officer Fountain should have conducted additional investigation. In fact, Plaintiffs make no

---

[2] There is an allegation that Mrs. Vadala made a false statement (D.I. 10 at 3), but that is not the same thing as saying Officer Fountain made a false statement.

factual allegations whatsoever with regard to either the warrant or the affidavit of probable cause prepared and submitted as application for the warrant. Having failed to allege any of these facts, Plaintiffs' § 1983 claim for false arrest fails as a matter of law.

The claim for false imprisonment also fails, because "an arrest based on probable cause [can] not become the source of a claim for false imprisonment." *Groman v. Twp of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995); *Neefe v. Layfield*, 2005 WL 2977782, at *4 n. 4 (D. Del. Nov. 7, 2005) ("Because the arrest was lawful, Plaintiff's unlawful imprisonment claim must fail."). Although the existence of probable cause in a § 1983 action is typically a question of fact, the court may conclude that probable cause existed as a matter of law if the evidence, viewed most favorably to a plaintiff, would not reasonably support a contrary factual finding. *Sherwood*, 113 F.3d at 401.

Probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey*, 71 F.3d 480, 483 (3d Cir. 1995). In assessing probable cause, the court considers "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). Once an officer believes she has probable cause, she is "not required to undertake an exhaustive investigation in order to validate the probable cause." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n. 8 (3d Cir. 2000) (explaining that an officer had probable cause, even though he did not interview every possible witness, because he had a credible report from a witness to the alleged crime).

Plaintiffs fail to allege facts showing that Officer Fountain lacked probable cause in obtaining the warrant. Plaintiffs acknowledge that Officer Fountain met with the victim, Mrs.

8

Vadala, on multiple occasions to discuss her complaint. (D.I. 10 at ¶ 15). These meetings were sufficient to give Officer Fountain probable cause for an arrest. *See, e.g., Merkle*, 211 F.3d 782, 790 (3d Cir. 2000) (finding sufficient facts to establish probable cause for an arrest where police officer "possessed knowledge of a credible report from a credible eyewitness").[3] That Officer Fountain did not take some additional action, unspecified by Plaintiffs, to corroborate Mrs. Vadala's complaint, does not mean that Officer Fountain lacked probable cause for an arrest.

Finally, Plaintiffs fail to state a claim for malicious prosecution. To prove malicious prosecution under § 1983, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

I have not determined whether Plaintiffs pled each of the essential elements of a malicious prosecution claim, finding it sufficient for the purposes of this motion that Plaintiffs have clearly failed to allege facts in support of the third element, an absence of probable cause. To start, all of the same facts regarding probable cause that Plaintiffs failed to allege with respect to the false arrest and false imprisonment claims also demonstrate a failure to state a malicious prosecution claim. *See Davis v. Rinehart*, 2014 WL 4749192, at *4 (D. Del. Sept. 22, 2014) (holding that a malicious prosecution claim failed because plaintiff failed to show lack of probable cause for his arrest). As explained above, the amended complaint contains no allegations that Officer Fountain

---

[3] The amended complaint alleges nothing that suggests Mrs. Vadala was not a credible witness with personal knowledge of the events she was relating.

relied on false statements or omissions to procure the arrest warrant, or that she should have had reason to believe that Mrs. Vadala was not a credible witness with personal knowledge.

In addition, a grand jury indictment is *prima facie* evidence of probable cause to prosecute. *King v. Deputy Atty. Gen. Del.*, 616 F. App'x 491, 495 (3d Cir. 2015); *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001) (noting that an indictment establishes probable cause "by definition."). A presumption that probable cause exists will only be overcome by evidence that the indictment was "procured by fraud, perjury or other corrupt means." *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 183 (3d Cir. 2013) (quoting *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989)). Plaintiffs pled no facts that the indictment was procured by fraud, perjury or other corrupt means. An allegation, without any elaboration, that Mr. Scheing "was and is innocent" (D.I. 10 ¶ 32) is not an allegation that there was a lack of probable cause. On a motion to dismiss, the court is not required "to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013); *Grubbs v. Univ. of Del. Police Dep't*, 2016 WL 1238923, at *9 (D. Del. Mar. 29, 2016) (rejecting as a legal conclusion plaintiff's assertion that his prosecution lacked probable cause). Accordingly, the claim for malicious prosecution, like the claims for false arrest and false imprisonment, must be dismissed for failure to state a claim.

### C. Loss of Consortium

A spouse's claim for loss of consortium is derivative of the other spouse's primary claim. *Rizzo v. E.I. du Pont de Nemours & Co.*, 1989 WL 135651, at *4 (Del. Super. Ct. Oct. 31, 1999). As a result, this count is viable only to the extent Mr. Scheing has a separate valid cause of action. *Id.* Because he does not, this claim fails as well.

**D. Leave to Amend**

The grant or denial of an opportunity to amend is within the discretion of the court. *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Denial of leave to amend is appropriate if amendment would be futile. *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d at 1434. Because so few facts were alleged regarding the personal involvement of the Defendants and the elements of each claim, I cannot conclude that amendment would be futile. Accordingly, the court grants Plaintiffs' request for leave to amend.

## V. CONCLUSION

For the foregoing reasons, Defendants motion to dismiss Count I and Count II of the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) (D.I. 12) is GRANTED. Plaintiffs' request for leave to amend is GRANTED. An appropriate order will be entered.

Dated: May 18, 2016

Richard G. Andrews
UNITED STATES DISTRICT JUDGE