IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HANS SCHEING and TINA WEBB-      )
SCHEING,                         )
                                 )
        Plaintiffs,              )
                                 )       Civ. No. 15-1028 RGA
    v.                           )
                                 )
DEPARTMENT OF NATURAL RESOURCES  )
AND ENVIRONMENTAL CONTROL, *et al.*, )
                                 )
        Defendants.              )

**MEMORANDUM**

This action arises out of an agreement whereby Plaintiff Hans and Tina Webb-Scheing[1]

were hired by the Vadalas, an elderly couple, to replace a failed septic tank at their home. After it

appeared that this work was not going to be done, Mrs. Vadala filed a complaint with the

Department of Natural Resources and Environmental Control ("DNREC"). DNREC investigated

the complaint and then arrested Mr. Scheing and prosecuted him in court. Plaintiff maintains that

he had not done anything wrong and filed suit in this court for, among other things, false arrest,

false imprisonment, and malicious prosecution. Currently before the court is Defendant's motion

to dismiss Plaintiff's second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 24).

For the reasons that follow, Defendants' motion is GRANTED.

---

[1] The allegations almost entirely consist of Mr. Scheing's cause of action, and thus I will use
"Plaintiff" to refer to Mr. Scheing individually and to Mr. and Mrs. Scheing collectively.

1

## I.   PROCEDURAL HISTORY

On November 6, 2015, Plaintiff filed a complaint with four counts: (i) malicious prosecution, false arrest, and false imprisonment; (ii) "Monell" claims; (iii) violation of due process under the Fourth and Fourteenth Amendments of the U.S. Constitution; and (iv) loss of consortium. (D.I. 1). The original complaint named as defendants Frank and Winifred Vadala, their daughter Frances Resto, who owns the property where the Vadalas live, DNREC, and the following current and former DNREC employees in both their official and individual capacities: Daniel Albanese, Dave Schepens, Andrew Whitman, and Officer Casey Fountain. The complaint contained no allegations regarding the roles, responsibilities, or titles of defendants Albanese, Schepens, and Whitman.

Plaintiff responded to Defendants' first motion to dismiss (D.I. 4 & 6) by filing their first amended complaint (D.I. 10). The amended complaint dropped the Vadalas, Resto, and DNREC as defendants, leaving the DNREC employees as the only remaining defendants in this action. The amended complaint also dropped the claims against the DNREC employees in their "official" capacities, proceeding against those defendants only in their "individual" capacities. Finally, the amended complaint dropped the "Monell" claims and combined the due process and malicious prosecution claims into a single count (Count I), in which Hans Scheing is the Plaintiff. Plaintiff kept the loss of consortium count (Count II), which purports to be on behalf of both Mr. and Mrs. Scheing. The factual allegations in the complaint otherwise remained essentially the same.

Defendant then filed their second motion to dismiss (D.I. 12), which argued that the claims against Albanese, Schepens, and Whitman must be dismissed for failure to allege any personal involvement, and that the claims against Officer Fountain must be dismissed for failure to allege essential elements of a false arrest, false imprisonment, and malicious prosecution. (D.I. 13). In

2

briefing this motion, Plaintiff withdrew the claim for due process violations under Count I, relying instead "exclusively on their cause for malicious prosecution." (D.I. 16 at 10). The Court granted Defendants' second motion to dismiss on both grounds. Plaintiff was granted leave to amend the complaint. (D.I. 18 at 11). Plaintiff amended the complaint (D.I. 23), and Defendants filed a third motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 24).

## II.   BACKGROUND

According to the second amended complaint, on July 22, 2013, the Vadalas contracted with Delaware Septic Service, LLC (Mrs. Scheing's company and Mr. Scheing's employer) to repair or replace a failed septic tank at the Vadalas' home. (D.I. 23 ¶ 15). On the same day Mr. Scheing performed soil testing in order to determine the type of septic system that would be required. (*Id.* at ¶ 16). Afterwards, Mr. Scheing informed the Vadalas that the septic installation would not begin until the results of the soil test were received and that the results would not likely be received for several months. (*Id.*). Mr. Scheing provided updates to the Vadalas on numerous occasions. (*Id.* at ¶ 17).

Approximately two months later, on September 10, 2013, Mrs. Vadala filed a complaint with DNREC claiming that Plaintiff failed to perform the contracted work. (*Id.* at ¶ 18). Plaintiff alleges that Mrs. Vadala made this claim "falsely." (*Id.*). The second amended complaint alleges that once Schepens learned of Mrs. Vadala's complaint, Schepens, Whitman and Albanese directed Officer Fountain to investigate the complaint and then brought criminal charges against Mr. Scheing, regardless of the truth of the complaint, in order to benefit Schepens' son's competing septic business and to advance their own careers. (*Id.* at ¶¶ 19, 20).

On or about October 14, 2013, Officer Fountain obtained a warrant for Mr. Scheing's arrest for two felony charges. (*Id.* at ¶ 25; *see* D.I. 5-1). Despite allegations in the second amended

3

complaint that Mrs. Vadala and Officer Fountain met in September 2013 to discuss her complaint, Plaintiff claims Officer Fountain filed the warrant without first verifying whether Mrs. Vadala's complaint was "accurate" and by recklessly disregarding the truth.[2] (*Id.* at ¶ 21).

Plaintiff alleges that a few days before the issuance of the arrest warrant, Plaintiff received the soil report from an expert. (*Id.* at ¶ 23). Mr. Scheing then left a voicemail with the Vadalas asking them to sign a permit application that would be submitted to DNREC along with the soil report. (*Id.* at ¶ 24). A few days after the issuance of the arrest warrant, the soil report was "turned over" to and marked "received" by DNREC. (*Id.* at ¶¶ 30, 31).

Around October 21, 2013, Officer Fountain contacted Mr. Scheing and told him that he wanted to "talk about some contracts." (*Id.* at ¶ 32). Officer Fountain told Mr. Scheing that he did not need a lawyer and never mentioned that he was being charged with theft or home improvement fraud. (*Id.*). Later, while at a police station, Mr. Scheing told Officer Fountain that he did the soil test. (*Id.* at ¶ 33). Officer Fountain, however, said that there was nothing Mr. Scheing could say or do to prevent his arrest, and then arrested him. (*Id.*).

On or about October 22, 2013, Defendants released a press statement stating that Plaintiff was charged with theft and home improvement fraud. (*Id.* at ¶ 39). Plaintiff contends that this was a false press release. (*Id.*). On the same day the Better Business Bureau of Delaware removed Plaintiff's high rating due to the press release. (*Id.* at ¶ 41). Plaintiff alleges that either Schepens,

---

[2]  Relying on facts put forth in the warrant, Defendants' opening brief provided additional information regarding Officer Fountain's investigation that was not alleged in the complaint. According to Mrs. Vadala, Mr. Scheing said that he was waiting on permits from DNREC and that the delay was therefore because of DNREC, not him. (D.I. 25 at 4). Officer Fountain contacted DNREC's Water Resources Office and was informed that no permit application had been filed by Mr. Scheing or anyone else for the Vadalas' property. (*Id.* at 5). Officer Fountain concluded that, not only was work not being performed on a leaking tank, but that Mr. Scheing was not being forthright about the reason for the delay. (*Id.*).

Whitman, and/or Albanese forwarded the press release to the Better Business Bureau of Delaware. (*Id*. at ¶ 42).

On November 6, 2013, the criminal charges against Mr. Scheing were dismissed by the Court of Common Pleas. (*Id*. at ¶ 43). Then, in January 2014, Mr. Scheing was indicted by a grand jury on four felony charges, including theft and home improvement fraud. (D.I. 5-2). Those claims were dismissed on September 16, 2014. (D.I. 23 at ¶ 47).

The second amended complaint still contains no allegations regarding the how, what, when, or why of any involvement by Schepens or Whitman in either Mrs. Vadala's complaint or Mr. Scheing's arrest and prosecution. The entirety of the allegations regarding Schepens and Whitman is that, along with Officer Fountain and Albanese, they "knew Hans Scheing had conducted a soil sample at the property, and that Mr. Scheing had done nothing wrong." (*Id*. at ¶ 45). The second amended complaint does not allege how Albanese, Schepens, or Whitman obtained such knowledge, what they did with that knowledge, or, if they failed to act, what duty they had to act because of that knowledge.

## III.   STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id*. ("Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). A "court ruling on a motion to dismiss may not consider matters extraneous to the pleadings," except a court may consider documents "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis and internal quotation marks omitted).

## IV.   DISCUSSION

In Defendants' brief for its third motion to dismiss, they allege that Plaintiff's second amended complaint fails to address the problems that led to this Court granting the previous motion to dismiss. (D.I. 25). Previously, this Court held that Plaintiff's amended complaint fails to allege any personal involvement of Defendants Albanese, Schepens and Whitman, and fails to allege facts that prove essential elements of false arrest, false imprisonment and malicious prosecution claims against Officer Fountain. The Court granted Plaintiff leave to amend the complaint yet Plaintiff still fails to allege the personal involvement of Defendants Albanese, Schepens, and Whitman and fails to plead facts that show the essential elements of the only remaining claim, malicious prosecution. Plaintiff's brief argues that the Court should not look to the attachments that Defendants provided (warrant and grand jury indictment) in reaching its decision, and that the claims are adequately alleged. (D.I. 28).

## A.   NON-PLEADING ATTACHMENTS

As a preliminary matter, Plaintiff asserts that the Court should not admit or review the warrant and grand jury indictment documents that Defendants attached as part of the motion to

6

dismiss. Plaintiff correctly states that, "a motion to dismiss must axiomatically regard the pleadings (i.e., not pieces of discovery claimed favorable to Movant). *In re Rockefeller Center Properties, Inc. Securities Litigation,* 184 F.3d 280 (3d Cir. 1999); *Dixon v. Golden-Masano-Bradley Law Firm,* 228 F.App'x 142, 143 (3d Cir. 2007)." (D.I. 28 at 10). The Court is permitted to consider documents other than the complaint when those documents are integral to the complaint. *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006). In the second amended complaint Plaintiff alleges that Defendants omitted key facts from the warrant and that this constitutes malice. Because of this assertion, the warrant becomes integral as to whether key facts were omitted. While the Court is permitted to consider the extra materials for certain purposes,[3] it does not need to do so for the purpose of resolving this motion.

## B. PERSONAL INVOLVEMENT

Plaintiff's second amended complaint fails to allege the personal involvement of Defendants Albanese, Schepens and Whitman. In its previous memorandum, the Court agreed with Defendants' substantive arguments regarding lack of personal involvement. (D.I. 18 at 6). Plaintiff's brief had failed to address this argument. (D.I. 16). Their second amended complaint still fails to allege personal involvement. Count I is brought pursuant to 42 U.S.C. § 1983. (D.I. 23 at 8-9, ¶ 57). Accordingly, the Defendants "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* at 1208. It is insufficient that a defendant was simply employed at the government agency where the underlying

---

[3] The Court recognizes that it cannot consider the factual contentions in the warrant to prove the truth of those assertions. *See Lum v. Bank of America,* 361 F.3d 217, 221-22 n.3 (3d Cir. 2004).

7

grievances arose. *Id.* Finally, allegations of participation, or actual knowledge and acquiescence, "must be made with appropriate particularity." *Id.* The complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Plaintiff's second amended complaint alleges only that Mrs. Vadala contacted Defendant Albanese before she filed her complaint with DNREC. (D.I. 23). Plaintiff did not allege that Defendant Albanese did anything with this information, and did not allege any other facts relating to Defendant Albanese.

Plaintiff's second amended complaint alleges even fewer facts regarding Defendants Schepens and Whitman. There are no facts relating to either defendant other than a single conclusory statement that they conspired against Plaintiff to benefit Defendant Schepens' son and his business, which Plaintiff claims competed with Mrs. Scheing's business. (D.I. 23 ¶ 19). There are no factual allegations. There is just the legal conclusion that Defendants were part of a conspiracy. Accordingly, the amended complaint fails to contain any pertinent factual allegations of personal involvement of Albanese, Schepens and Whitman. The claims against these defendants must be dismissed.

## C. MALICIOUS PROSECUTION

Plaintiff's second amended complaint no longer asserts a claim for false arrest or false imprisonment. In responding to Defendants' most recent motion to dismiss, Plaintiff acknowledges that he no longer pleads claims of false arrest or false imprisonment and withdrew the due process claims. (D.I. 28 at 1, 16).[4] This leaves only a malicious prosecution claim.

---

[4] "[F]alse arrest, false imprisonment, etc... are no longer pleaded." (D.I. 28 at 1). "Plaintiffs respectfully withdraw their due process claims." (D.I. 28 at 16).

8

Plaintiff's malicious prosecution claim appears to argue that Defendants conducted an insufficient investigation before obtaining the arrest warrant and grand jury indictment and that this constitutes malice. (D.I. 23 ¶¶ 25, 26, 27). However, this alone is not enough where Plaintiff fails to plead essential elements of the claim.

Plaintiff fails to state a claim for malicious prosecution. To prove malicious prosecution under § 1983, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). For Defendant Fountain, elements one, two and five are plausibly alleged.[5]

Plaintiff fails, however to allege specific facts in support of the third and fourth elements of this claim. The third and fourth element of malicious prosecution require Plaintiff to show that the arrest was made without probable cause, and that it was made maliciously. *See Davis v. Rinehart*, 2014 WL 4749192, at *4 (D. Del. Sept. 22, 2014) (holding at summary judgment that a malicious prosecution claim failed because plaintiff failed to show lack of probable cause for his arrest). Although the existence of probable cause in a § 1983 action is typically a question of fact, the court may conclude that probable cause existed as a matter of law if the evidence, viewed most favorably to a plaintiff, would not reasonably support a contrary factual finding.

---

[5] There are no factual allegations that Schepens, Whitmore, or Albanese initiated the criminal proceedings. They are not alleged to be law enforcement officers. They are not alleged to have done the investigation, obtained the warrant, participated in the arrest, participated in obtaining the indictment, or testified at any hearing. Alleging they "directed" Officer Fountain to do all of the above, without more, is insufficient. *Rode v. Dellarciprete,* 845 F.2d at 1208.

9

*Sherwood*, 113 F.3d at 401. Probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey*, 71 F.3d 480, 483 (3d Cir. 1995). In assessing probable cause, the court considers "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988). Once an officer believes he has probable cause, he is "not required to undertake an exhaustive investigation in order to validate the probable cause." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n. 8 (3d Cir. 2000) (explaining that an officer had probable cause, even though he did not interview every possible witness, because he had a credible report from a witness to the alleged crime). The second amended complaint contains no allegations that Officer Fountain relied on his own false statements or omissions to procure the arrest warrant or grand jury indictment, or that he should have had reason to believe that Mrs. Vadala was not a credible witness with personal knowledge.

An arrest warrant or a grand jury indictment is *prima facie* evidence of probable cause to prosecute. *King v. Deputy Atty. Gen. Del.*, 616 F. App'x 491, 495 (3d Cir. 2015); *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001) (noting that an indictment establishes probable cause "by definition."). A presumption that probable cause exists will only be overcome by evidence that the indictment was "procured by fraud, perjury or other corrupt means." *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989). Plaintiff must allege with sufficient specificity that the evidence relied upon by Defendants in procuring a grand jury indictment was known by the Defendants to be false when they presented it to the grand jury. *Id.* at 352 (noting that the district court reasoned that plaintiff's allegations that defendants "influenced and

10

directed the grand jury ... to present false findings ..." and "maliciously corrupted and perverted"
the grand jury investigation "to result in a baseless presentment," were conclusory, and
insufficient to survive the defendants' motions to dismiss). Plaintiff pled no facts that the
indictment was procured by fraud, perjury or other corrupt means. An allegation, without any
elaboration, that Mr. Scheing "was and is innocent"[6] (D.I. 23 ¶ 48) is not an allegation that there
was a lack of probable cause. On a motion to dismiss, the court is not required "to accept
unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual
allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013); *Grubbs v. Univ. of Del. Police
Dep't*, 2016 WL 1238923, at \*9 (D. Del. Mar. 29, 2016) (rejecting as a legal conclusion
plaintiff's assertion that his prosecution lacked probable cause).

The second amended complaint still contains no specific allegations that Officer Fountain
made false statements or knowingly omitted exculpatory information in his application for the
arrest warrant. Plaintiff acknowledge that Officer Fountain met with the victim, Mrs. Vadala, to
discuss her complaint. (D.I. 23 at ¶ 21). The meeting was sufficient to give Officer Fountain
probable cause for an arrest. *See, e.g., Merkle*, 211 F.3d 782, 790 (3d Cir. 2000) (finding
sufficient facts to establish probable cause for an arrest where police officer "possessed
knowledge of a credible report from a credible eyewitness").[7] That Officer Fountain did not take
some additional action, unspecified by Plaintiff, to corroborate Mrs. Vadala's complaint, does
not mean that Officer Fountain lacked probable cause for an arrest. Plaintiff's complaint seems

---

[6] Nothing in this Memorandum should be interpreted as doubting Mr. Scheing's innocence.
Innocence alone, however, is not enough to sustain a malicious prosecution claim.
[7] The amended complaint alleges nothing that suggests Mrs. Vadala was not a credible witness
with personal knowledge of the events she was relating.

11

to allege that Officer Fountain should have conducted additional investigation,[8] or somehow should have known that Plaintiff had started work despite Mrs. Vadala's claim to the contrary. In fact, Plaintiff make no factual allegations whatsoever with regard to either the warrant or the affidavit of probable cause prepared and submitted with the application for the warrant. Plaintiff continues to allege that Officer Fountain "knew or should have known" that work was being done. "Should have known" is a negligence standard and Plaintiff here is accusing the Officer Fountain of violating constitutional rights. Purposeful conduct is the applicable standard, and Plaintiff has not alleged any facts showing that Officer Fountain purposefully omitted facts from the warrant application or in presenting evidence to the grand jury. Accordingly, the claim for malicious prosecution must be dismissed for failure to state a claim.

## D. PLAINTIFF'S LOSS OF CONSORTIUM

A spouse's claim for loss of consortium is derivative of the other spouse's primary claim. *Rizzo v. E.I. du Pont de Nemours & Co.*, 1989 WL 135651, at *4 (Del. Super. Ct. Oct. 31, 1999). As a result, this count is viable only to the extent Mr. Scheing has a separate valid cause of action. *Id.* Because he does not, this claim fails as well.

---

[8] Plaintiff alleges that Officer Fountain did additional investigation to determine whether the soil test results had been filed with DNREC. (D.I. 23 ¶ 28). Plaintiff acknowledges implicitly that the inquiry did not result in any evidence helpful to Plaintiff.

12

## V.    CONCLUSION

For the foregoing reasons, Defendants motion to dismiss Count I and Count II of the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) (D.I. 24) is GRANTED. An appropriate order will be entered.

Dated: November 29, 2016

_____

UNITED STATES DISTRICT JUDGE

13